Eastern District of Kentucky
**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

NOV 0 2 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 06-CV-348-JMH

THOMAS EDWARD BURKE                                        PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

JAMES L. MORGAN, ET AL.                                   DEFENDANTS

Thomas Edward Burke, who is confined in the Kentucky State Penitentiary ("KSP") in Eddyville, Kentucky, has filed a civil rights complaint under 42 U.S.C. §1983 [Record No. 1].[1] He has filed a motion to proceed *in forma pauperis*, which motion the Court will address by separate Order.

This matter is before the Court for initial screening.  28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To establish a right to relief under §1983, the plaintiff must plead and prove two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994).

---

[1]

The plaintiff originally filed this action in the United States District Court for the Western District of Kentucky. On October 16, 2006, Judge McKinley of the Western District transferred the plaintiff's complaint to this Court, on the basis that the Western District was not the proper venue for the plaintiff's claims.

*Pro se* complaints are held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, under 28 U.S.C. §1915(e)(2), the district court can dismiss a case at any time if it determines the action: (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

## NAMED DEFENDANTS

The plaintiff names the following defendants: (1) James L. Morgan, Warden of the Northpoint Training Center ("NTC") in Burgin, Kentucky; and (2) Sharon Caudill, Deputy Warden of Programs for the Kentucky Department of Corrections ("KDOC").

## RELIEF REQUESTED

The plaintiff seeks: (1) monetary damages of $100,000.00; (2) injunctive relief in the form of an order releasing him from custody; and (3) punitive damages.

## CLAIMS

The plaintiff alleges that when he was previously confined in the NTC, the defendants violated his rights under the Eighth Amendment of the United States Constitution. Specifically, the plaintiff alleges that the defendants failed to protect him from being physically attacked on two different occasions (October 31, 2005, and December 24, 2005) by two different NTC inmates. He complains that on both dates, he sustained bodily injury and was placed in Administrative Segregation. He also complains about the fact that he was ultimately transferred to the KSP, a maximum security state prison. To the extent that the plaintiff complains about

2

the circumstances leading up to his transfer, the claim could be classified as one asserting a due process claim under the Fourteenth Amendment.

## ALLEGATIONS OF THE COMPLAINT

When the events about which the plaintiff complains occurred, he was incarcerated in the NTC. The NTC is located in Burgin, Kentucky. Plaintiff's exhibits reveal that on October 31, 2006, NTC staff issued a "Detention Order" which caused the plaintiff to be placed in Administrative Segregation. The "Detention Order" accused the plaintiff and another inmate in the general population (Inmate Sharp) of participating in a physical altercation. The plaintiff responded to the Detention Order by stating that Inmate Sharp had attacked him.

On November 7, 2005, NTC staff issued a "Disciplinary Report Form, Part I - Write Up and Investigation." Staff determined that there was a sufficient factual basis on which to support a charge being filed against the plaintiff and Inmate Scott for participating in a physical altercation. The plaintiff and Sharp were notified that charges were pending against them. The plaintiff provides no further information about this charge or the length of his detention in Administrative Segregation.

On December 24, 2005, NTC staff issued another "Disciplinary Report Form, Part I - Write Up and Investigation." In this second report, the NTC staff member alleged that on the same day (December 24, 2005), Correctional Officer Wood had been called to respond to a fight between the plaintiff and another inmate, Daniel Bone. The report states that as follows:

3

"both inmates admitted to fighting and wrote statements. Both inmates checked
by Medical and photos took. Both inmates admitted to putting stuff in each
other's bed."

As a result, the plaintiff was charged with "Physical Action Against Another Inmate-No
Injury." The report indicates that the plaintiff did not elect to waive an Adjustment Committee
Hearing. On the same date, NTC staff issued a "Detention Order" which again caused the
plaintiff to be placed in Administrative Segregation pending a meeting with the Adjustment
Officer. The plaintiff responded to the Detention Order by stating that Inmate Bone had attacked
him and that he (plaintiff) had sustained bodily injuries as a result of the attack. The plaintiff
provides no further information about this charge or the length of his detention in Administrative
Segregation.

The next document which the plaintiff provides is a third "Detention Order" dated
March 3, 2006. It states that the plaintiff was again being placed in Administrative Segregation
"due to reaching maximum security level. The detention was approved by Sharon
Caudill/Deputy Warden of Programs." The plaintiff responded to the Detention Order by stating
that he would like to be recommended for a custody classification.

In response to that request, Sharon Caudill wrote a letter, dated March 16, 2006, to the
plaintiff.[2] Caudill denied the plaintiff's appeal of his transfer to the KSP and explained that the
KDOC was not in a position to place in inmate in an institution "which best meets his personal
needs." She informed the plaintiff that the KDOC "will not reward negative behavior by

---

[2]

In this letter, Sharon Caudill identifies herself as the Deputy Warden of Programs for the
KDOC.

Case: 5:06-cv-00348-JMH-REW   Doc #: 3   Filed: 11/02/06   Page: 5 of 11 - Page ID#: 45

recommending transfer to a facility of the inmates' choice." The plaintiff does not state how long he remained in Administrative Segregation. He was, in fact, transferred to the KSP.

## DISCUSSION
### 1. Eighth Amendment Claim - Failure to Protect

The Court will dismiss the plaintiff's Eighth Amendment claim in which he alleged that the named defendants failed to protect him from assault by other NTC inmates. The Prison Litigation Reform Act (PLRA) requires that a prisoner must exhaust administrative remedies before filing suit in the district court. 42 U.S.C.A. §1997e. It states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a) (2004).

The plaintiff-prisoner has the burden of proving that a grievance has been fully exhausted, *Baxter v. Rose*, 305 F.3d 486, 488 (6th Cir.2002), and the prisoner must attach documentation to the complaint as proof. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.1998). Exhaustion is not jurisdictional; it is mandatory, *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir.1999), even if proceeding through the administrative system would be "futile." *Hartsfield v. Vidor*, 199 F.3d 305, 308-10 (6th Cir.1999).

The KDOC has promulgated a set of administrative regulations at 501 K.A.R. 6:020. These regulations, referred to as "Corrections Policies and Procedures" ("CPP"), govern various aspects of prison life and prison procedures. CPP Number 14.6 (February 3, 2006) is entitled *Inmate Grievance Process* and explains the four steps which state inmates are required to pursue in order to file a grievance. CPP 14.6, § II (J)(1)-(4) requires a prisoner in a state correctional institution to submit a written grievance, following specific criteria. He must informally attempt

to resolve his grievance by submitting it to the prison's Grievance Aide, the Grievance Coordinator, the department head, or institutional staff. *Id.*, § (II)(J)(1)(a) and(b) ("Step 1").

If the attempt at informal resolution fails, he must pursue formal steps by seeking a hearing before the Grievance Committee [*Id.*, § (II)(J)(2) ("Step 2")]. If unhappy with that outcome, the prisoner must forward the Committee's decision to the warden, who is responsible for making a final written decision [*Id.*, § (II)(J)(3) ("Step 3")]. A prisoner who is not satisfied with the warden's final decision may appeal that decision to the Commissioner of the KDOC within fifteen days [*Id.*, § (II)(J)(4) ("Step 4")].

Here, the plaintiff simply has not demonstrated that he exhausted his Eighth Amendment claim according to KDOC regulations. In one passage of his Complaint Form, the plaintiff states that he could not file an administrative appeal with the Commissioner of the KDOC because he was in Administrative Segregation. This allegation does not save the claim, because it ignores the fact that the plaintiff made no attempt to undertake the *first three steps* of the KDOC's administrative grievance process. The plaintiff's Eighth Amendment claim alleging that the defendants failed to protect him from inmate assaults will be dismissed without prejudice.

## 2. Claims Regarding Confinement in Administrative Segregation

The plaintiff appears to be asserting a Fourteenth Amendment due process claim relating to his episodes of detention in Administrative Segregation. As the plaintiff has not provided the Court with complete information regarding the duration of these periods of confinement, the Court is unable to make a definitive ruling on the merits of this claim. The Court notes that this claim appears to suffer from two other defects which dictate dismissal without prejudice.

First, the plaintiff does not allege that these episodes of confinement caused him to lose any good-time credits, in which he had a constitutionally protected liberty interest. For a prisoner, a deprivation of a legally cognizable liberty interest occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293 (1995).

Simply put, if the plaintiff did not sustain the loss of good-time credits, the three periods of time (of unknown duration) during which he was confined in Administrative Segregation would not rise to the level of a constitutional violation. *See Sandin v. Conner*, 515 U.S. at 484-86 (30-day sentence to segregation upheld); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.1997); *Wilson v. Wellman*, 238 F.3d 426, 2000 WL 1829265, **3 (6th Cir.(Mich.) December 6, 2000) (Unpublished Disposition (Since the plaintiff did not suffer the loss of good-time credits or any other action affecting the duration of his sentence, he had no due process claim because his punishment, including disciplinary segregation, did not impose an atypical and significant hardship in relation to the ordinary incidents of prison life); *Ford v. Harvey*, 106 Fed. Appx. 397 (Not selected for publication in the Federal Reporter) (August 6, 2004) (State prisoner's placement in disciplinary confinement did not implicate a liberty interest entitled to due process protection, where it was neither accompanied by loss of good-time credits nor lasted for a significant period of time causing an unusual hardship on prisoner).

Second, in *Heck v. Humphrey,* 512 U.S. 477 (1994), the Supreme Court of the United States ruled that a prisoner cannot bring a civil rights action directly challenging his confinement until and unless the challenged confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or otherwise been called into question by

a federal court's issuance of a writ of habeas corpus. *Id.* at 486-87. A claim challenging a confinement, without a state or habeas court action having declared the confinement invalid, must be dismissed regardless of whether the plaintiff seeks injunctive or monetary relief. *Id.* at 489-90 (claim for damages is not cognizable); *Preiser v. Rodriguez,* 411 U.S. 475, 488-90 (1973) (claim for injunctive relief is only cognizable under 28 U.S.C. §2254).

In *Edwards v. Balisok,* 520 U.S. 641 (1997), the Supreme Court was faced with a similar claim as herein, a procedural challenge to a disciplinary proceeding wherein the prisoner lost good-time credit. The Court held that *Heck* barred the plaintiff's due process claims, which would necessarily imply the invalidity of the loss of good-time credits, until and unless the prison disciplinary conviction was reversed.[3] *Id.* at 646. The United States Court of Appeals for the Sixth Circuit has extended *Heck* to bar *Bivens* actions. *Lanier v. Bryant,* 332 F.3d 999, 1005 (6th Cir.2003).[4]

Clearly, an adjudication in the instant plaintiff's favor herein would implicate the validity of his prison disciplinary conviction. To the extent that the plaintiff challenges either the result of his disciplinary proceedings, and/or his three periods of detention in segregation, and seeks damages as a result thereof, his claims fail. A prisoner cannot challenge the disciplinary proceeding resulting in a loss of good-time credits in a §1983 action if his disciplinary conviction

---

[3]

Again, in the instant case, the plaintiff has not alleged the loss of good-time credit. But if he had, the holding of *Edwards v. Balisok* would preclude his claims for injunctive relief and monetary damages.

[4] *Bivens* allows civil claims alleging constitutional violations to be brought against persons who act under color of federal law. The corollary to *Bivens* is 42 U.S.C. §1983, which is the mechanism for asserting civil claims alleging constitutional violations against persons who act under color of state law.

has not been reversed. *See Edwards,* 520 U.S. at 646. Dismissal of this action is not only consistent with rulings by the High Court in *Heck* and *Edwards*, but is also consistent with the application of *Heck* and *Edwards* in Sixth Circuit jurisprudence. *See Hinton v. United States,* 91 Fed. Appx. 491 (6th Cir. 2004) (unpublished); and *Johnston v. Sanders,* 86 Fed. Appx. 909 (6th Cir. 2004) (unpublished).

### 3. Claims Regarding Transfer to KSP

The Court must dismiss the plaintiff's construed Fourteenth Amendment due process claim regarding his transfer to the KSP. Well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, security classification, or housing assignment. *See Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano,* 427 U.S. 215, 225, 96 S. Ct. 2532 (1976); *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S. Ct. 2543 (1976); *Marchesani v. McCune,* 531 F.2d 459 (10th Cir.), *cert. denied,* 429 U.S. 846 (1976).

Assessing the facts under the Eighth Amendment would change the result. As noted, the Supreme Court has determined that for a prisoner, a deprivation of a legally cognizable liberty interest occurs only when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. at 484. Citing *Hewitt v. Helms,* 459 U.S. 460, 467 (1983), the Supreme Court held in *Sandin* that the Due Process Clause is aimed at protecting no more than "the most basic liberty interests" in prisoners, and that it will not protect against "every change in the conditions of confinement having a substantial adverse impact" on inmates. *Sandin v. Conner,* 515 U.S. at 478.

9

Under the *Sandin* analysis, transfers to higher security prisons, housing assignments and classification decisions (transfers) have been upheld as the "ordinary incidents of prison life." *See Merchant v. Hawk-Sawyer*, 37 Fed. Appx. 143, 145 (6th Cir. (Ky.), May 7, 2002) (not selected for publication in the Federal Reporter) (Merchant's maximum security classification, 21-month confinement in the special housing unit, and transfer to a more secure facility were simply the "ordinary incidents of prison life" and did not implicate a protected liberty interest).

The plaintiff has not alleged the denial of any basic human needs, such as water, food, access to the general population, access to religious services, or access to recreational activities. The law is clear that inmates have no legally protected liberty interest in either the location of their confinement or in their classification and housing status. Under *Sandin*'s framework, the Court cannot conclude that the transfer about which the plaintiff complains raises a valid constitutional claim under the Eighth Amendment. The Court will dismiss this claim. 28 U.S.C. §1915(e)(2)(2)(ii).

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1)     The plaintiff's Eighth Amendment claim that the defendants failed to protect him from inmate assaults is **DISMISSED WITHOUT PREJUDICE**.

(2)     The plaintiff's construed Fourteenth Amendment due process claim relating to his three episodes of detention in Administrative Segregation in the NTC is **DISMISSED WITHOUT PREJUDICE**.

(3)     The plaintiff's construed Fourteenth Amendment due process claim regarding his transfer to the KSP is **DISMISSED WITH PREJUDICE**.

(4)     Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

This the  2ᵈ  day of  November , 2006.

_Joseph M. Hood_
JOSEPH M. HOOD, CHIEF JUDGE